UNITED STATES of America, Plaintiff

v.

Danny Twana BOOSE, Defendant.

No. 1:95CR82–M.

United States District Court,
N.D. Mississippi,
Eastern Division.

Aug. 1, 2007.

888

Paul D. Roberts, U.S. Attorney's Office, Oxford, MS, for Plaintiff.

### ORDER DENYING MOTION FOR POST–CONVICTION DNA TESTING

MILLS, Chief Judge.

This matter comes before the court on the *pro se* motion for post-conviction DNA testing filed by Danny Twana Boose under the Innocence Protection Act of 2004, 18 U.S.C. § 3600. The government has responded, and the defendant has replied. The matter is ripe for resolution. For the reasons set forth below, the instant motion shall be denied.

### Facts[1]

On July 4, 1995, Danny Twana Boose kidnapped Alnora Grace Shumpert from a residence in Tupelo, Mississippi, using a baseball bat to beat down two doors at the residence. He then took Alnora Shumpert to the Natchez Trace Parkway where he raped her.

Danny Boose's trial was held on January 23 and 24, 1996. The jury found him guilty of kidnapping and rape, and he was sentenced to life imprisonment on May 21, 1996. The convictions and sentence were affirmed by the Fifth Circuit. *United States v. Boose*, 102 F.3d 550, 1996 WL 670529 (5th Cir.1996). The defendant did not seek *certiorari* in the U.S. Supreme Court.

During pretrial investigation, semen was taken from Shumpert's jogging pants (Tr. 244). The deoxyribonucleic acid (DNA) from the semen sample was compared with DNA swabs taken from Danny Boose (Tr. 260). The FBI conducted analysis at the DNA testing unit in Washington, D.C. (Tr. 260). The FBI lab concluded that the samples contained a mixture of DNA from three different individuals, two of whom were Danny Boose and Alnora Shumpert (Tr. 275).

Alan Giusti, the DNA expert who conducted the examination in the case, testified that the probability of a random person's DNA having the same combination of markers of DNA in the semen samples was 1 in 59,000 (Tr. 280). The lab concluded that Boose's DNA was consistent with DNA found in the semen samples (Tr. 276). Giusti also testified that, taking the differing strength of the DNA samples into account, the likelihood of a person having the same DNA profile as Boose was less than 1 in 500 million people (Tr. 283). Giusti stated that it was his opinion that Boose's DNA was present in the semen

---

1. The court has taken the facts of this case from the government's response to the defendant's motion for DNA testing—which is corroborated by the record in this case. The defendant has offered no evidence in opposition to these facts—other than his bare assertion that he did not commit the crime of his conviction. As such, the facts set forth herein remain uncontradicted.

found in Shumpert's jogging pants (Tr. 281).

The DNA evidence merely bolstered the testimony of numerous witnesses, including that of Raymond Osborne, Boose's accomplice, who observed the violent kidnapping. Osborne testified that he watched as Boose raped Shumpert in a park on the Natchez Trace. In all, *ten* civilian witnesses either observed Danny Boose as he committed one of the crimes—or heard him confess to the crimes.

### The Innocence Protection Act of 2004

Resolution of this matter is governed by the Innocence Protection Act of 2004, 18 U.S.C. § 3600, which provides a rigorous method for a convicted defendant to petition a court to conduct DNA testing to establish innocence. The statute describes ten elements that must be proven before the court may order DNA testing. "[T]he court that entered the judgment of conviction shall order DNA testing of specific evidence *if the court finds that all of the following apply: . . . .* " 18 U.S.C. § 3600(a) (emphasis added). The statute provides a method to order DNA testing in cases if the defendant can meet ten factors (with some factors holding multiple requirements).

Among other factors, the court must find that: (1) the case did not involve previous DNA testing or that there is newer, more effective DNA testing available (18 U.S.C. § 3600(a)(3)); (2) that "the specific evidence to be tested is in the possession of the Government and has been subject to a chain of custody and retained under conditions sufficient to ensure that such evidence has not been substituted, contaminated, tampered with, replaced, or altered in any respect material to the proposed DNA testing" (18 U.S.C. § 3600(a)(4)); (3) that the defendant shows that the evidence would establish a theory of defense that is not inconsistent with an affirmative defense and would establish actual innocence of the defendant (18 U.S.C. § 3600(a)(6)); and, (4) that the DNA testing would raise a reasonable possibility that the defendant is actually innocent of the crime (18 U.S.C. § 3600(a)(8)).

### Discussion of the Innocence Protection Act Generally

The Innocence Protection Act of 2004 was passed, in part, to provide a defendant convicted of a crime through mostly circumstantial evidence a vehicle to petition for DNA testing in cases where it had not been previously done (or where the procedures have been improved through the passage of time) to show that the DNA evidence did not implicate him in the crime. Indeed, over the years DNA testing has been used to exonerate 200 defendants who have wrongfully been convicted of crimes and spent years in prison. *www .innocenceproject.org/ Content/530.php*. The scope of the Innocence Protection Act is quite narrow. A defendant seeking to use the statute must first meet *all* of its many requirements.

■ The government has argued that the statute is "not intended to provide a method to collaterally attack a conviction years after the possibility of review of the conviction by the Supreme Court by writ of certiorari or by a district court under Title 28, United States Code, Section 2255 have expired." The court disagrees. Indeed, the entire purpose of the statute is to permit collateral review of convictions through DNA testing—no matter how much time has transpired—or what other deadlines have passed. What the statute seeks—with its narrow tailoring—is justice itself.

The Innocence Protection Act gives a defendant in the right circumstances the means to initiate tests which may prove that he is *actually innocent* of the crime of

his conviction. On the other hand, a defendant who seeks and is granted such DNA testing risks exposure to criminal liability, as his DNA profile will be entered in the National DNA Index System ("NDIS"), and, should it match a DNA profile connected with an unsolved crime in that system, the government is required to "notify the appropriate agency and preserve the DNA sample of the applicant." 18 U.S.C. § 3600(e)(2)-(e)(3)(B). As such, defendants who know they have committed crimes for which they have not been charged—and for which DNA evidence could shed some light—may think twice before availing themselves of this statute. New DNA testing could well confirm the guilt of such a defendant already serving time—yet lead to his prosecution for *other* crimes in the NDIS database.

## Application of the Innocence Protection Act to This Case

The defendant cannot satisfy four of the statutory requirements of the Innocence Protection Act in this case: 18 U.S.C. § 3600(a)(3) (evidence was not previously subjected to DNA testing—or improved testing procedures have become available), 18 U.S.C. § 3600(a)(4) (evidence to be tested is in the possession of the government and has been protected from substitution, contamination, tampering, replacement, or alteration), 18 U.S.C. § 3600(a)(6) (identify a theory of defense that would establish the actual innocence), 18 U.S.C. § 3600(a)(8) (proposed DNA testing may produce new material evidence would raise a reasonable probability that the applicant did not commit the offense).

### DNA Testing Was Conducted in the Defendant's Criminal Trial, and Improved Testing Procedures Have Not Become Available

■ The defendant does not satisfy subsection 18 U.S.C. § 3600(a)(3), which requires that the evidence must not have been previously subjected to DNA testing—or *was* previously subjected to DNA testing, but a new method or technology is substantially more probative than the prior DNA testing.

The defendant's DNA was previously tested by the FBI and, although new testing methods have been developed, the new methods are less probative than the previous test because they are designed for circumstances not present in this case. The defendant also makes unsubstantiated claims about problems with the reliability and integrity of his previous test. The FBI lab has had problems with the integrity of its procedures on two major occasions; however, neither of these instances is connected with the present case.

The FBI DNA analysis unit tested Boose's known sample against questioned semen samples from Alnora Shumpert's jogging pants in 1995. The defendant correctly points out that DNA testing techniques have advanced significantly over the past ten years. These newer testing techniques would not, however, help the defendant in this case. The two recently developed testing methods, Y-chromosome testing and mitochondrial testing, are used in circumstances not present in this case. Y-chromosome testing is primarily used for identification of paternally related men. Mitochondrial DNA testing is used primarily when the only available sources for DNA comparison are teeth or bone. As humans only inherit mitochondrial DNA from their mothers, mitochondrial DNA testing can also be used to track maternal ancestry. The primary test used in 1995 and today by the FBI DNA analysis unit is short tandem repeat (STR) analysis. This test is the most widely used by DNA labs, including Molecular World, Inc., which Danny Boose suggests as an alternate testing facility. STR testing is widely

used because it is capable of a high degree of accuracy, showing an overwhelmingly large probability that a suspect's DNA matches an evidence sample. Thus, the defendant does not request testing by a new method that is substantially more probative than the previous method, as required by § 3600(a)(3).

■ Danny Boose also calls attention to instances of FBI whistle blowing during the past ten years and suggests a problem with the reliability and integrity of the FBI lab. Since 1995, there have been two major instances of whistle blowing at the FBI crime lab, but neither of these instances was connected with the defendant's DNA results. In 1995, Frederic Whitehurst made allegations of sloppy procedures in the FBI laboratory. He claimed that the lab had mishandled several high profile cases, including the World Trade Center and Oklahoma City Federal building bombings. Whitehurst's allegations were restricted to the laboratory's Explosives Unit, Chemistry–Toxicology Unit, and Materials Analysis Unit. He made no allegations of wrongdoing in the DNA analysis unit. Furthermore, the Office of the Inspector General (OIG) investigated these claims and released a special report containing its findings, which shows no evidence of problems with reliability and integrity in the DNA analysis unit. *See,* United States Department of Justice/Office of the Inspector General Special Report, *The FBI Laboratory: An Investigation into Laboratory Practices and Alleged Misconduct in Explosives–Related and Other Cases* (Apr.1997), http://www.usdoj .gov/oig/special/9704a/.

A second case of whistle blowing occurred in 2002. This instance involved Jacqueline Blake, an FBI biologist involved in DNA testing. She began working as a DNA tester in 2000, well after the defendant's sample had been submitted and analyzed. In addition, the FBI laboratory has not identified a case in which Blake's mishandling affected the outcome of a DNA test. *See,* United States Department of Justice/Office of the Inspector General, *The FBI DNA Laboratory: A Review of Protocol and Practice Vulnerabilities* (May 2004), *www.usdoj.gov/oig/special/0405/final.pdf.*

For these reasons, the defendant has not met the criterion of 18 U.S.C. § 3600(a)(3), and he has not proven that the FBI procedures or testers in his case are suspect. As such, his claim under the Innocence Protection Act must fail.

## The Evidence to Be Tested Is Not in the Possession of the Government

■ The government is no longer in possession of the specific evidence the defendant now seeks to have tested. Pursuant to FBI policy, after conviction, affirmance on appeal, and the passing of the appropriate time for the filing of a petition for writ of *certiorari* in the U.S. Supreme Court, the original evidence, including Shumpert's jogging pants, DNA swabs from Boose and Shumpert, and the DNA testing cells and exhibits were destroyed on or around September 2, 1997. As such, the defendant does not satisfy the requirement of 18 U.S.C. § 3600(A)(4), and his claim under the Innocence Protection Act must fail.

## The Defendant Has Not Identified a Theory of Defense That Would Establish His Actual Innocence—or How DNA Testing Would Support Such a Theory

■ The defendant's theory of defense would not establish his actual innocence of the offenses of kidnapping and rape, as required under 18 U.S.C. § 3600(a)(6). Nor would further DNA testing support such a theory of defense and raise a rea-

sonable probability that the defendant is actually innocent. His new theory of defense is, "Mr. Boose hereby declares under penalt[y] of perjury, pursuant to 28 U.S.C. § 1746, that he is actually innocent of the crimes he was convicted of in 1996." In other words, "I didn't do it." Such a bare allegation hardly meets the rigorous standard of the Innocence Protection Act.

The defendant argues that the DNA testing will establish his innocence. He does not, however, explain how multiple witnesses could have misidentified him (including his codefendant—who watched as Danny Boose raped Alnora Grace Shumpert along the Natchez Trace Parkway). DNA evidence was only part of the substantial proof presented against Danny Boose at trial. Several people testified that Danny Twana Boose beat down the front door and bathroom door with a baseball bat—then kidnapped Shumpert. His accomplice, Raymond Osborne, testified that he watched Danny Boose take Shumpert against her will out of a residence in Tupelo, Mississippi, transport her to the Natchez Trace Parkway, then rape her at a park there (Tr. 147). Before trial, Osborne pled guilty to aiding and abetting kidnapping and rape (Tr. 149). Based upon this evidence, Danny Twana Boose was convicted by a jury, and his conviction was upheld on appeal.

DNA was not the only evidence that convicted Danny Boose—it merely complemented the other evidence presented in the case. Indeed, the overwhelming eyewitness testimony alone would have been sufficient to sustain Danny Boose's conviction in this case. The defendant has not presented a theory of defense that—with further DNA testing—might exonerate him. As such, he has not satisfied § 3600(a)(6) or § 3600(a)(8), and his claim under the Innocence Protection Act must fail.

Thus, for the reasons set forth above, the defendant's motion for DNA testing under 18 U.S.C. § 3600 is hereby **DENIED.**

**SO ORDERED.**