**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.



FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 2 1 2014

CHIEF JUSTICE

This opinion was filed for record
at 8:00AM on Aug. 21, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 88336-0 |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| LINDSEY L. CRUMPTON, | ) | |
| | ) | |
| Petitioner. | ) | |
| | ) | Filed _____ AUG 2 1 2014 _____ |
| _____ | ) | |

FAIRHURST, J.—In 1993, petitioner Lindsey L. Crumpton was convicted of five counts of first degree rape and one count of residential burglary. In 2011, he petitioned the court for postconviction deoxyribonucleic acid (DNA) testing pursuant to RCW 10.73.170. The superior court denied this motion, saying he had not shown a "'likelihood that the DNA evidence would demonstrate his innocence on a more probable than not basis'" as is required by RCW 10.73.170(3). Clerk's Papers (CP) at 63 (quoting RCW 10.73.170(3)). The Court of Appeals affirmed. We must decide the standard the court should use to decide a motion for postconviction DNA testing and whether a court should presume DNA evidence would be favorable to the convicted individual when determining if it is likely the evidence would prove

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

his or her innocence. We hold that a court should use such a presumption. We reverse

and remand to the trial court to apply the proper standard.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 1993, a 75 year old widow living alone in Bremerton was repeatedly raped

by an intruder. *State v. Crumpton*, 172 Wn. App. 408, 410, 289 P.3d 766 (2012). The

woman was awoken at around 3:15 a.m. and saw a man standing in her room. *Id.*

The man covered her head with bedding and raped her five times, four times anally

and once vaginally. *Id.* In between each rape, he rummaged through different rooms

in the house for valuables. *Id.* The woman was unable to give a good description of

the rapist due to the dark room and her head being covered during the encounter. *Id.*

However, she described him as a "'big black man'" who felt "'greasy'" and smelled

of cologne. *Id.* at 410-11 (internal quotation marks omitted) (quoting *State v.*

*Crumpton*, noted at 82 Wn. App. 1015, slip op. at 3 (1996)).

After the fifth rape, the man poured something cold onto the woman,[1] rammed

handkerchiefs from the woman's nightstand drawer into her perineal area, and then

left. *Id.* at 410. Shortly afterward, she went to her neighbor's house for help. *Id.* at

411. At around 5:15 a.m., they called the police. *Id.* Paramedics came and took her

---

[1]A later search of her house found an open bottle of Crisco oil on the dresser. *Crumpton*, 172 Wn. App. at 412.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

to the hospital, where the doctor observed bruising on her neck, tearing of her rectum, and blood in her vagina. *Id.*

A police officer stopped Crumpton at 5:23 a.m. because he matched the description of the rapist. *Id.* Crumpton was running a half a mile from the woman's house. He was wearing soiled pants and a black leather jacket without a shirt. *Id.* His skin was wet looking. *Id.* He was carrying a flower-print design pillowcase or blanket smeared with blood and matching the woman's bedding. *Id.* He had a beige phone cord,[2] costume jewelry, a cigarette case, and a number of handkerchiefs. *Id.* at 411-12. The woman identified all these items as belonging to her. *Id.* at 412. One of the hairs collected from the woman's mattress matched a pubic hair sample from Crumpton. *Id.* at 413.

When he was first stopped, Crumpton claimed he was going to his mother's house from his sister's house. *Id.* at 411. He said he had the sheets for his mother to wash, the handkerchiefs because he had a cold, and the jewelry because he didn't trust his sister with it. *Id.* at 412. Later, Crumpton admitted to being in the woman's house for approximately 40 minutes and to taking her items but denied hitting or raping her.

_____

[2]Search of the woman's house revealed that one phone cord had been cut and another completely removed. *Id.*

Crumpton was charged with five counts of first degree rape and one count of residential burglary. After a trial, the jury returned guilty verdicts on all counts. The trial court imposed an exceptional sentence based on deliberate cruelty and the particular vulnerability of the victim. Crumpton appealed, and his conviction was affirmed. This court denied review.

Years later, Crumpton filed a motion to allow postconviction DNA testing of several items of evidence that contained biological material: the rectal and vaginal swabs of the victim, the flannel sheet from the bed, white handkerchiefs collected from the scene of the rape, and hairs that were also collected from the scene. The trial court denied this motion. CP at 60-65. The Court of Appeals affirmed the trial court in a 2-1 published decision. *Crumpton*, 172 Wn. App. 408. We granted review. *State v. Crumpton*, 177 Wn.2d 1015, 306 P.3d 960 (2013).

## II.    ISSUE PRESENTED

On a motion for postconviction DNA testing, should a trial court presume that DNA results would be favorable to the defendant when determining if the DNA test would demonstrate his innocence on a more probable than not basis?

## III.    ANALYSIS

We review a trial court's decision on a motion for postconviction DNA testing for abuse of discretion. *State v. Riofta*, 166 Wn.2d 358, 370, 209 P.3d 467 (2009). A trial court abuses its discretion if the decision rests on facts unsupported in the record

4

*State v. Crumpton*, No. 88336-0

or was reached by applying the wrong legal standard. *State v. Rafay*, 167 Wn.2d 644, 655, 222 P.3d 86 (2009).

There is no constitutional right to DNA testing. *Dist. Att'y's Office v. Osborne*, 557 U.S. 52, 73-74, 129 S. Ct. 2308, 174 L. Ed. 2d 38 (2009). However, as a response to developing technology, postconviction DNA testing has been widely accepted as a way to ensure an innocent person is not in jail. *Riofta*, 166 Wn.2d at 368 (noting that the Washington statute is modeled after the federal DNA testing statute, 18 U.S.C. § 3600(a)). RCW 10.73.170 provides a mechanism under Washington law for individuals to seek DNA testing in order to establish their innocence.

This statute has both procedural and substantive components. The State has conceded that Crumpton has met his procedural burden, so these requirements will not be discussed further.[3] At issue is the substantive portion of the statute that requires the convicted person to show "the likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis." RCW 10.73.170(3).

---

[3]RCW 10.73.170(2) lists the procedural requirements of this statute:
The motion shall:
(a) State that:
(i) The court ruled that DNA testing did not meet acceptable scientific standards; or
(ii) DNA testing technology was not sufficiently developed to test the DNA evidence in the case; or
(iii) The DNA testing now requested would be significantly more accurate than prior DNA testing or would provide significant new information;
(b) Explain why DNA evidence is material to the identity of the perpetrator of, or accomplice to, the crime, or to sentence enhancement; and
(c) Comply with all other procedural requirements established by court rule.

Crumpton argues that in deciding whether to grant a motion for postconviction DNA testing, the court should presume that the DNA results would be favorable to the defendant. The inquiry then becomes the likelihood that *favorable* DNA evidence would demonstrate innocence on a more probable than not basis. Conversely, the State rejects the idea that the court must employ this presumption. The State argues a defendant should have to show the court that the DNA evidence would demonstrate his innocence on a more probable than not basis in light of all the other evidence presented at trial before a court will order a DNA test.

While the text of RCW 10.73.170(3) does not specifically mention a favorable presumption, cases applying this statute and the substantive standard therein have discussed the favorable results. In *Riofta*, the movant sought DNA testing of a white hat that was worn by the perpetrator of a shooting for which he was convicted.[4] 166 Wn.2d at 361. We wrote, "To determine the probability that a petitioner could demonstrate his innocence with the aid of *favorable* DNA test results, courts must consider the evidence produced at trial along with any newly discovered evidence and the impact that an exculpatory DNA test could have in light of this evidence."

---

[4]Whether to use this presumption was not directly at issue in *Riofta*. The issue with the substantive section of the statute was whether the DNA evidence should be viewed in conjunction with the rest of the evidence from the trial when deciding whether the results would demonstrate the convicted party's innocence. *Riofta*, 166 Wn.2d at 367-68. The court held that a motion for DNA testing is not decided in a vacuum; the entirety of the case against the convicted individual must be taken into account. *Id.* at 367-68 ("The statute requires a trial court to grant a motion for postconviction testing when exculpatory results would, *in combination with the other evidence*, raise a reasonable probability the petitioner was not the perpetrator.").

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Id.* at 369 (emphasis added). The court then applied the facts of the case to this standard by looking at each of the two possible favorable outcomes for Riofta. *Id.* at 370. Assuming each were true, the court found that neither result would make his guilt or innocence more clear.[5] *Id.* at 370-71. Because neither favorable result made Riofta's innocence more or less likely, the court denied the motion for testing. *Id.* The *Riofta* court recognized that a court should assess the impact of an *exculpatory* DNA test in light of all the evidence from trial when deciding a motion for postconviction DNA. *Id.* at 369.

A few years later, this court heard *State v. Thompson*, which involved the brutal rape and assault of a woman in a hotel room. 173 Wn.2d 865, 867-68, 271 P.3d 204 (2009). Thompson was convicted of first degree rape and later moved for postconviction DNA testing. *Id.* at 867, 869. Like the court in *Riofta*, the *Thompson* court presumed the evidence would be favorable to the convicted party to decide the motion. *Id.* at 875. The court held that if the DNA evidence excluded Thompson as the single rapist, it is more probable than not that he was innocent. Accordingly, the court affirmed, remanding for testing. *Id.* ("If DNA test results should conclusively

---

[5]The two possible favorable outcomes for *Riofta* were "the absence of his DNA and the presence of another person's DNA." 166 Wn.2d at 370. If either of those were results of the DNA test, it would not make it any more likely Riofta was innocent. If his DNA was not on the hat, it would not prove he was not the shooter since the hat belonged to the owner of the stolen vehicle and the perpetrator might have worn it only during the shooting itself. *Id.* Similarly, the presence of a third person's DNA is unavailing since that person could have worn the hat at some other time after the vehicle was stolen, not necessarily at the time of the shooting. *Id.* at 370-71.

exclude Thompson as the source of the collected semen, it is more probable than not that his innocence would be established.").

The Court of Appeals decided consistently with these cases in *State v. Gray*, 151 Wn. App. 762, 215 P.3d 961 (2009). *Gray* involved a single perpetrator who attacked a group of teenagers as they were camping and raped one of the girls. *Id.* at 766. Later, Gray filed for postconviction DNA testing of various items from the scene. The court used the standard from *Riofta* and analyzed the possible inferences from favorable DNA results. *Id.* at 774. The court concluded that if some of the evidence Gray requested be tested came back as not his DNA, it would be material to his innocence and therefore the motion for postconviction testing should be granted. *Id.* If only one person committed the crime, then the presence of other DNA would suggest innocence on a more probable than not basis. *Id.* at 774.

Case law supports using a favorable presumption when deciding whether to grant a motion for postconviction DNA testing. We formally hold that this presumption is part of the standard in RCW 10.73.170. A court should look to whether, considering all the evidence from trial and assuming an exculpatory DNA test result, it is likely the individual is innocent on a more probable than not basis. If so, the court should grant the motion and allow testing to be done. Only then can it be determined whether the DNA actually exculpates the individual and if the results could be used to support a motion for a new trial.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The present case is factually analogous to *Thompson* and *Gray*, both of which involved a single rapist. Each case involved weak identification evidence but otherwise had very strong physical and circumstantial evidence tying the convicted individual to the crime. Because there was only one rapist and no other sexual activity, any DNA on the tested evidence would necessarily have to be the rapist's DNA. These courts found that even in the context of all the strong evidence of guilt, DNA testing should be granted because if the DNA did not match, the convicted individual was most likely innocent. This is true in this case as well. Any DNA evidence left on the items Crumpton petitioned to test would almost certainly have been left by the perpetrator of the rape. Exculpatory results of DNA testing in this case would directly affect the likelihood Crumpton was innocent. Using this presumption Crumpton's motion for testing must be granted.

In addition to the fact that our case law supports this presumption, we believe it is the appropriate analytical method for achieving the most just resolution to these motions. We reaffirm *Riofta* that the substantive requirement in the statute is meant to be "onerous." *Riofta*, 166 Wn.2d at 367 ("In contrast to the statute's lenient procedural requirements, its substantive standard is onerous."). Testing should be limited to situations where there is a credible showing that it could benefit a possibly innocent individual, *id.* at 369; *see Thompson*, 173 Wn.2d at 884-85 (Madsen, C.J., dissenting), not only because that is the goal of the statute but also to avoid

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

overburdening labs or wasting state resources without good reason. But at the same time, this technological improvement should be made available to convicted individuals who might actually be innocent. Many innocent individuals have been exonerated through postconviction DNA tests, including some who had overwhelming evidence indicating guilt. And there is no direct evidence showing that labs have in fact been overburdened by an onslaught of postconviction testing.[6] Thus, to balance these interests, the standard must be onerous but reasonable enough to let legitimate claims survive. Using a favorable presumption within the context of the statutory language accomplishes this balance.

In affirming this presumption, we recognize that in light of the overwhelming physical and circumstantial evidence against Crumpton some might find it difficult to grant him this postconviction DNA testing. But, there will always be strong evidence against a convicted individual since they were convicted of the crime beyond a reasonable doubt. *Gray*, 151 Wn. App. at 773 ("[W]hether the evidence in the original trial was strong or weak is only part of the question."). The court should not focus on the weight or sufficiency of evidence presented at trial to decide a motion for postconviction DNA testing. It must focus on the likelihood that DNA evidence could demonstrate the individual's innocence in spite of the multitude of

_____

[6]The Innocence Network points out that "[a]s of last year, only three of the state crime lab's 967 backlogged DNA cases were the result of an RCW 10.73.170 petition." Amicus Br. of Innocence Network at 7-8.

10

other evidence against them. In other words, a court should evaluate the likelihood of innocence based on a favorable test result, not the likelihood of a favorable test result in the first place.

At the same time, a trial court should not ignore the evidence from trial. It must look at DNA evidence in the context of all the evidence against the individual when deciding the motion.[7] *Riofta,* 166 Wn.2d at 368. It is only within the context of the other evidence that the court can determine whether DNA evidence might demonstrate innocence. A trial court must "look to see how the evidence stands up in the presence of a favorable DNA test." *Crumpton*, 172 Wn. App at 422 (Worswick, C.J., dissenting). While a court should not retry a case to decide this motion, the evidence at trial matters and should be taken into account. *Thompson,* 173 Wn.2d at 873-74.

Imposing a favorable presumption when deciding a motion for postconviction DNA testing affects only whether the DNA will be tested; it does not affect whether the individual will be granted a new trial. Only if the DNA evidence belongs to another individual could there be significant evidence to support a motion for a new trial. But, if the DNA evidence comes back as that of the convicted individual, it reinforces the conviction. And, if the DNA evidence comes back inconclusive, it

---

[7]As long as it is used in the context of the proper standard, a court may even consider why the defendant did not request DNA testing in the original trial when deciding a motion for postconviction testing. *Riofta*, 166 Wn.2d at 366 n.1, 368 n.3.

11

likely does nothing. That alone will be insufficient to satisfy the heavy burden needed to grant a motion for a new trial. Obtaining a DNA test is simply the first step on the journey for a new trial.

Employing this presumption will not result in courts granting every motion for postconviction DNA testing, as *Riofta* demonstrates. *See Riofta*, 166 Wn.2d at 373. A defendant must still show that the DNA results could substantiate his or her innocence. While we do not create an automatic right to postconviction DNA testing for single rapist cases, we recognize DNA results in such cases is logically very persuasive. If there is only one rapist, DNA evidence that does not match the convicted individual is extremely persuasive of that person's innocence. *Crumpton*, 172 Wn. App. at 424-25 (Worswick, C.J., dissenting). However, the defendant must show the link between the evidence and the possibility it would show innocence just like in all other cases before the court on such a motion.

There is no indication that the trial court used a standard that included use of a favorable presumption. In its conclusions of law, the trial court stuck to the statutory language, with no mention of a presumption of favorability or hypothetical inferences from an exculpatory test result. Since we have found that this presumption is part of Washington law and should be applied, we are forced to assume the trial court did not apply the proper standard and therefore abused its discretion.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

## IV.   CONCLUSION

We reverse the Court of Appeals and hold that the standard for postconviction DNA testing was properly articulated in *Riofta* to include the imposition of a presumption in favor of the convicted individual. A trial court must look to whether the DNA results, in conjunction with the other evidence from the trial, demonstrate the individual's innocence on a more probable than not basis, assuming the DNA results would be favorable to that convicted individual. The trial court did not use the proper standard, and so it abused its discretion. We reverse and remand to the trial court to apply the proper standard to the motion.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Fairhurst, J.

WE CONCUR:

Wiggins, J.

González, J.

Gordon McCloud, J.

Dwyer, J.P.T.

*State v. Crumpton (Lindsey L.)*

No. 88336-0

STEPHENS, J. (dissenting)—Lindsey Crumpton was convicted of five counts of first degree rape and one count of residential burglary in 1993. Crumpton petitioned the court in 2001 for postconviction deoxyribonucleic acid (DNA) testing on the victim's rape kit and various items recovered from the scene. The majority holds that a trial court should presume favorable test results in deciding whether to grant a motion for postconviction DNA testing under RCW 10.73.170. Majority at 8. However, the statute contains no such presumption. The substantive portion of RCW 10.73.170 provides that a court shall grant a petitioner's motion for postconviction DNA testing if, in addition to satisfying the procedural requirements, "the convicted person has shown the likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis." RCW 10.73.170(3).

As applied to a single perpetrator rape case, the absence of a favorable presumption in the statute is critical. The proper focus of the statutory test is whether the petitioner has shown his innocence on a more probable than not basis, and a favorable presumption in a single perpetrator rape case essentially eliminates

that onerous standard. The legislative history behind Washington's postconviction DNA testing statute does not support applying such a presumption. Further, the cases upon which the majority relies are distinguishable from the case before us. For these reasons, I respectfully dissent.

ANALYSIS

*A Favorable Presumption Does Not Further the Legislative Intent*
*Behind the Statute*

While Washington's postconviction DNA testing statute was promulgated in 2000, the current version of the statute reflects amendments proposed in 2004 and enacted in 2005. As it pertains to the substantive portion of the statute, "the substitute bill changes the standard for granting a motion for post-conviction DNA testing to a more probable than not likelihood that the DNA evidence would demonstrate innocence." H.B. REP. on H.B. 2872, at 3, 58th Leg., Reg. Sess. (Wash. 2004), *available at* http://apps.leg.wa.gov/documents/billdocs/2003-04/ Pdf/Bill%20Reports/House/2872.HBR.pdf. In doing so, the legislature sought to balance society's interest in justice with its interest in finality. It recognized the need to "ensure that a process remains in place for cases where DNA tests could provide evidence of a person's innocence" and the countervailing need for finality in matters that have already been properly decided by a jury. *Id*. The balance it struck places a high burden on obtaining postconviction DNA testing, a standard we have described as "onerous." *State v. Riofta*, 166 Wn.2d 358, 367, 209 P.3d 467 (2009). As the legislature explained, "[b]y keeping the high 'proof of

-2-

innocence' standard in the bill, the number of requests will remain low and testing will only be ordered in cases where there is a credible showing that it likely could benefit an innocent person." H.B. REP. on H.B. 2872, at 3. Thus, it is evident that the legislature intended to create an avenue, not a freeway, for postconviction DNA testing.

This interpretation is consistent with the driving force behind the statute's reboot in 2005. Under the Innocence Protection Act, 18 U.S.C. § 3600, federal funding was available "to help states clean out the backlog of postconviction DNA testing and evidence." H.B. REP. on H.B. 1014, at 3, 59th Leg., Reg. Sess. (Wash. 2005), *available at* http://apps.leg.wa.gov/documents/billdocs/2005-06/Pdf/Bill%20Reports/House/1014.HBR.pdf. Our legislature acknowledged the need to conform the Washington statute to this newly enacted legislation, and the bill report to H.B. 1014 proclaimed that the Washington bill met the federal standard. *Id.* The majority recognizes this. Majority at 5.

Importantly, the federal postconviction DNA testing statute, 18 U.S.C. § 3600(a), provides no favorable presumption. "Under the federal statute, an inmate can obtain postconviction DNA testing by showing, inter alia, that the testing 'may produce new material evidence' that would 'support [a] theory' of innocence and 'raise a reasonable probability that the applicant did not commit the offense.'" *Riofta*, 166 Wn.2d at 368 (alteration in original) (quoting 18 U.S.C. § 3600(a)(6), (8)(A), (B)). As is the case with the Washington statute, the burden under the federal statute is heavy. A petitioner who has already been convicted does not

-3-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

enjoy the same liberties as existed prior to trial; the "'presumption of innocence disappears.'" *Dist. Att'y's Office v. Osborne*, 557 U.S. 52, 68-69, 129 S. Ct. 2308, 174 L. Ed. 2d 38 (2009) (quoting *Herrera v. Collins*, 506 U.S. 390, 399, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993)). The federal statute similarly strikes a balance between the "unique power of DNA testing" to exonerate wrongly convicted individuals and "important governmental interests," such as finality, integrity, and minimalizing costs. *Id*. at 84-85 (Alito, J., concurring). In order to obtain postconviction DNA testing, the petitioner must present a theory of innocence and not simply contend, "'I didn't do it''; "[s]uch a bare allegation hardly meets the rigorous standard" set forth in 18 U.S.C. § 3600(a)(6). *United States v. Boose*, 498 F. Supp. 2d 887, 892 (N.D. Miss. 2007).

Logically, if the presumption of innocence disappears once an individual has been convicted after a fair trial, the concern for finality weighs heavily against applying a presumption that favors the defendant. The majority acknowledges that a favorable presumption essentially assures postconviction DNA testing in a single perpetrator rape case. Majority at 12 ("If there is only one rapist, DNA evidence that does not match the convicted individual is extremely persuasive of that person's innocence."). What then becomes of the balance the legislature struck in RCW 10.73.170? The legislature certainly could have enacted a law requiring postconviction DNA testing in every case that involves physical evidence that had not been tested at trial. Instead it passed a less encompassing statute, opening the door to such testing only when the petitioner shows "the likelihood that the DNA

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

evidence would demonstrate innocence on a more probable than not basis." RCW 10.73.170(3). And, it vested discretion in the trial court to consider the evidence at trial in conjunction with any new evidence and the possibility of favorable DNA results. As the Court of Appeals recognized, conclusively applying a favorable presumption practically eliminates the trial court's discretion in a single perpetrator rape case. *State v. Crumpton*, 172 Wn. App. 408, 419 n.9, 421, 289 P.3d 766 (2012).

The majority's reading of RCW 10.73.170 seems to reflect more the questions a trial court will naturally ponder than the requirements of the statute. It stands to reason that a trial court will ask, "If this test result were to show none of the petitioner's DNA, is he likely innocent?" But, the court must also consider the two other possibilities—results that are inconclusive or results that confirm the petitioner's guilt. The cognitive process a court will engage in does not obviate the statutory burden on a petitioner to prove the likelihood that new DNA evidence will demonstrate innocence on a more probable than not basis.

As mentioned above, a mere "'I didn't do it'" assertion cannot satisfy the onerous standard for postconviction DNA testing. *Boose*, 498 F. Supp. 2d at 892. Here, Crumpton does not advance any new theory of defense. Rather, he centers his motion on the contention that because this is a single perpetrator rape case, his innocence is established if his DNA is not found on the rape kit. Clerk's Papers at 28, 34, 35. While the majority proclaims that "the defendant must show the link between the evidence and the possibility it would show innocence just like in all

other cases before the court on such a motion," majority at 12, Crumpton has not shown any link between DNA testing and his innocence. His petition rests on nothing more than the bare fact that this is a single perpetrator rape case. The effect of the majority's presumption is to satisfy Crumpton's evidentiary burden when the evidence itself does not. The majority's imposition of a presumption shifts the focus of the statute away from whether the petitioner has shown innocence on a more probable than not basis. The effect, at least in single perpetrator rape cases, is to create a revolving door for individuals already convicted beyond a reasonable doubt to postpone finality and burden the system with requests for DNA testing solely on the ground that new DNA technology now exists.

### *The Cases Cited by the Majority Are Distinguishable*

While the majority believes its holding is dictated by *Riofta*, 166 Wn.2d 358, and *State v. Thompson*, 173 Wn.2d 865, 271 P.3d 204 (2012), those cases are distinguishable. In *Riofta*, we were concerned with the Court of Appeals holding that a petitioner must "demonstrate his innocence on the basis of the test results *alone*." 166 Wn.2d at 367. At issue was whether RCW 10.73.170 allows a court to consider DNA evidence in conjunction with the evidence presented at trial to determine if the petitioner has established "innocen[ce] on a more probable than not basis." *Id.* at 367-68.[1] In resolving that issue, we described the evidence as

---

[1] The *Riofta* dissent further confirms that a favorable presumption was not at issue in that court's discussion. In his concurrence in dissent, Justice Chambers proposed a revised version of the statute to the legislature:

"favorable DNA test results." *Id.* at 369. Contrary to the majority's belief, we never considered whether a favorable presumption should be read into the language of RCW 10.73.170(3), nor does our analysis imply that it should. Nothing in *Riofta* supports a reading of the statute that would allow the petitioner in a case such as this to rest on the presumption of favorable test results alone.

Further, the majority contends that the present case is factually analogous to *Thompson*, where the court "found that even in the context of all the strong evidence of guilt, DNA testing should be granted because if the DNA did not match, the convicted individual was most likely innocent." Majority at 9.[2] I disagree.

In *Thompson*, we overturned the trial court's dismissal of the petitioner's motion for postconviction DNA testing, holding that "[i]f DNA test results should conclusively exclude Thompson as the source of the collected semen, it is more probable than not that his innocence would be established, *particularly in light of the weakness of the victim's identification of Thompson as her attacker.*" 173 Wn.2d at 875 (emphasis added). Although police officers witnessed Thompson

---

[I]f the legislature would like to clarify its meaning in the wake of this opinion it might wish to amend RCW 10.73.170(3) to read:
"The court shall grant a motion requesting DNA testing under this section if . . . the convicted person has shown ~~the~~ any reasonable likelihood that the DNA evidence would demonstrate innocence ~~on a more probable than not basis.~~"

*Riofta*, 166 Wn.2d at 379 n.7.

[2] The majority similarly contends that the present case is factually analogous to *State v. Gray*, 151 Wn. App. 762, 215 P.3d 961 (2009). While I concede the cases are factually analogous, *Gray* was a Court of Appeals case that was decided upon the same misreading of *Riofta* that I respectfully take issue with above. Therefore, I find the *Gray* decision faulty for the same reasons I discuss here.

-7-

pushing the victim out of the hotel room where the rape allegedly occurred, this evidence of his guilt was undermined by the victim's inconsistent testimony and the lack of corroborating physical evidence. The victim testified that she lost consciousness numerous times, "did not remember what occurred between the final time she lost consciousness and her awakening at the hospital," had "no memory of talking to or seeing anyone at the hotel" at which the rape occurred, and did not remember speaking to the police at the hospital. *Id.* at 867-68. The doctor who examined the victim testified that "he would expect the rapist to have sustained injuries to his hands," yet Thompson's fists showed no "signs that he administered a beating on the night of his arrest." *Id.* at 868-69. And, the victim "indicated to an investigator for the defendant that the rapist might have had blonde hair, did not have facial hair, and was between 5'7" and 5'8" tall. . . . Thompson has black hair, is 6'3" tall, and had a moustache at the time of his arrest." *Id.* Given the victim's weak identification, there was a substantial likelihood that DNA evidence would demonstrate the defendant's innocence on a more probable than not basis.

The facts before us are not nearly as precarious as those in *Thompson*. Here, Crumpton admitted to being in the victim's house. He was found running a half-mile away from the victim's house within minutes after the incident, carrying a number of the victim's possessions, including a blood-stained blanket or pillowcase matching the victim's bedding. 172 Wn. App. at 411-12. Further, the victim's description of her attacker was consistent with Crumpton's physical features. *Id.* at 411. In light of the strong evidence of Crumpton's guilt, RCW

-8-

10.73.170 requires Crumpton to establish a theory of innocence in order for his motion for postconviction DNA testing to be granted.

CONCLUSION

Crumpton's motion for postconviction DNA testing should be denied because he has not met his statutory burden (i.e., showing that DNA evidence would demonstrate his innocence on a more probable than not basis). The legislative intent behind Washington's postconviction DNA testing statute does not support reading a favorable presumption into the language of RCW 10.73.170. Nor does our precedent require this result.

The majority's presumption will require DNA testing in every single perpetrator rape case in which a convicted defendant asserts his or her innocence and shows DNA technology has improved. Courts will likely see individuals convicted of crimes committed 20-plus years ago petitioning for postconviction DNA testing because DNA testing was not available at the time of their original trial or was less reliable than it is now. And, 20 years hence, a favorable presumption will similarly require new DNA testing because the accuracy of the testing will certainly improve. We should leave the focus of the statute where it was intended to be. Rather than reading a favorable presumption into the language of RCW 10.73.170, we should require the petitioner to show what the statute's plain language demands—a "likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis." RCW 10.73.170(3).

-9-

Stym, J.

Owens, J

Madsen, C.J.