**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 81054-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ROBERT LEE FREEMAN, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — Robert Freeman appeals the trial court's order denying his motion for postconviction deoxyribonucleic acid (DNA) testing, alleging that new testing would show his innocence. We affirm.

<u>FACTS</u>

A.F.'s mother, Virginia Freeman married Freeman[1] when A.F. was six years old. Freeman is not A.F.'s biological father. Freeman would frequently come into A.F.'s room and rub her back while she slept. When A.F. was in fourth grade, Freeman began to touch her inappropriately under her clothing. More than half the time, Freeman would digitally penetrate A.F.

---

[1] Because the individuals have the same surname, Virginia will be referred to by her first name to avoid confusion.

Citations and pin cites are based on the Westlaw online version of the cited material.

A.F. disclosed the molestation to a few friends. In 1999, when A.F. was fifteen years old, she told Virginia about the abuse. Virginia confronted Freeman, who denied touching A.F. Neither A.F. nor Virginia reported the molestation to police at the time. Virginia reported the incidents to the police on September 17, 2001, after reporting a domestic violence assault by Freeman.

Virginia previously discovered small stains in the carpet around A.F.'s bed. In 1999, after A.F. disclosed the abuse to her, Virginia found a teddy bear with similar stains on A.F.'s bed. Virginia put the teddy bear in a backpack and hid it. During the police investigation of A.F.'s abuse, a detective took carpet samples from A.F.'s bedroom and the teddy bear.

Freeman, Virginia, and A.F. provided DNA samples for DNA testing. The carpet samples and teddy bear were indicative of semen and matched Freeman's DNA. When detectives asked Freeman why his semen was found in A.F.'s room, he said that it could have slipped off Virginia after Freeman and Virginia had sexual intercourse. The teddy bear sample was a "pure male profile," matching Freeman without the presence of any other individuals. The carpet samples matched Freeman and A.F. Virginia's DNA was not biologically present in the carpet samples.

A.F. testified at trial. Freeman was convicted of three counts of rape of a child and three counts of child molestation.[2] Freeman appealed, alleging ineffective

---

[2] Specifically, Freeman was convicted of one count each of the following crimes: rape of a child in the first degree, rape of a child in the second degree, rape of a child in the third degree, child molestation in the first degree, child molestation in the second degree, and child molestation in the third degree.

assistance of counsel, and this court affirmed his convictions.[3]  Freeman filed numerous collateral attacks, all of which were denied.

In 2018, Freeman moved to dismiss his charges under a writ of coram nobis or under CrR 8.3 for the governmental mismanagement of the DNA evidence.  In the alternative, he requested postconviction DNA testing under RCW 10.73.170.

The superior court transferred Freeman's motion to this court as a personal restraint petition.  We remanded Freeman's request for postconviction DNA testing to the trial court that entered the judgment of conviction.  We dismissed the remainder of Freeman's petition as untimely.  The trial court denied the motion for postconviction DNA testing, finding that Freeman failed to show that a favorable result would demonstrate his innocence by a more probable than not basis, because Freeman did not contest the DNA as his.  Freeman appeals.

ANALYSIS

Freeman argues that the court erred by denying his motion for DNA testing, contending that new DNA testing would support his innocence.  We disagree.

"We review a trial court's decision on a motion for postconviction DNA testing for abuse of discretion."  State v. Gentry, 183 Wn.2d 749, 764, 356 P.3d 714 (2015).  The court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds.  State v. Rafay, 167 Wn.2d 644, 655, 222 P.3d 86 (2009).  Under RCW 10.73.170(2)(a)(iii), a person convicted of a felony who is currently serving a sentence may request DNA testing if the testing is "significantly more accurate than prior DNA testing or would provide significant new information."  The petitioner meets

---

[3] See State v. Freeman, No. 53169-7-I (Wash. Ct. App. Jan. 24, 2005) (unpublished).

their substantive burden by demonstrating that the DNA evidence would prove their innocence on a more probable than not basis. RCW 10.73.170(3). "The statute requires a trial court to grant a motion for postconviction testing when exculpatory results would, in combination with the other evidence, raise a reasonable probability the petitioner was not the perpetrator." State v. Riofta, 166 Wn.2d 358, 367-68, 209 P.3d 467 (2009). The court considers the evidence from trial along with any newly discovered evidence, as well as considering the impact a favorable DNA result could have in light of that evidence. Riofta, 166 Wn.2d at 369. The court must assume a favorable test result when considering a request for DNA testing. State v. Crumpton, 181 Wn.2d 252, 264, 332 P.3d 448 (2014).

Freeman contends that a favorable result would not be the absence of his DNA in the sample, but the presence of Virginia's DNA to support his explanation. He relies on State v. Braa, 2 Wn. App. 2d 510, 520, 410 P.3d 1176 (2018), where this court held that postconviction DNA testing was relevant to a petitioner claiming self-defense, but that the petitioner ultimately could not establish that DNA testing would establish his innocence on a more probable than not basis. Freeman's argument that postconviction DNA testing is available to support an alternative theory, like self-defense, has merit in the context of his argument that his DNA was present in A.F.'s room for an innocent reason. However, Freeman still fails to establish that a favorable DNA result—the presence of Virginia's DNA in the samples—would establish his innocence by a more probable than not basis.

In State v. Thompson, 173 Wn.2d 865, 875, 271 P.3d 204 (2012), our Supreme Court held that when the victim had intercourse with only one individual, her rapist, on

-4-

the night of the attack, postconviction DNA testing should have been granted. The court reasoned that if the DNA tests excluded the convicted petitioner, who claimed innocence, it is more probable than not that his innocence would be established. Thompson, 173 Wn.2d at 875. Similarly in Crumpton, the Supreme Court held that postconviction DNA testing should have been granted in a rape case where the petitioner claimed innocence, because "DNA evidence that does not match the convicted individual is extremely persuasive of that person's innocence." 181 Wn.2d at 263.

Unlike Thompson and Crumpton, Freeman does not claim that new DNA testing would show that the semen in A.F.'s room was not his. Rather, he argues for testing to lend credibility for his theory that his semen fell off Virginia when she checked on A.F. after intercourse. However, A.F. testified in detail about sexual abuse she suffered, identifying her stepfather, Freeman, as the perpetrator. Neither victim in Thompson or Crumpton was able to make a definitive identification of their attacker.

Even if new DNA testing were to show Virginia's DNA present, Freeman is still unable to establish that this result is more probable than not to show his innocence. Virginia lived in the home, and was frequently in her daughter's room, therefore, her DNA could be present in the carpet samples. Ultimately, the jury heard Freeman's argument about the innocent explanation of his semen in A.F.'s room and rejected that argument. When considering the other evidence from trial, there is not a reasonable probability that Freeman was not the perpetrator.[4]

---

[4] Freeman submitted a statement of additional grounds, in which he challenged finding 3: "DNA testing performed and presented to the jury at trial established that DNA found in swabs from the teddy bear and carpet samples from A.F.s bedroom matched the defendant's DNA." Substantial evidence in

No. 81054-5-I/6

Affirmed.

_____ Mann, C.J.

WE CONCUR:

_____          _____
Chun, J.                         Dwyer, J.

---

the record supports this finding, therefore, Freeman's argument has no merit.  Blackburn v. State, 186 Wn.2d 250, 256, 375 P.3d 1076 (2016).

     Freeman also argues that he is entitled to a dismissal under CrR 8.3(b) due to alleged mishandling of evidence by police, that the alleged mishandling of evidence constitutes a Brady violation, and prosecutorial misconduct.  Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).  These issues are time barred by RCW 10.73.090.  He also argues that the trial court should have heard his motion for the writ of coram nobis.  This court has already dismissed the writ of coram nobis.