IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39446-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SEBASTIAN CORTES AGUILAR, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — In 2012, a jury convicted Sebastian Cortes Aguilar of first degree murder of his wife and second degree assault of his daughter. In 2022, the trial court denied his motion for postconviction DNA testing of the crime scene for his own blood. We affirm.

FACTS

In August 2011, Sebastian Cortes Aguilar stabbed his wife to death after confronting her about telephone conversations with another man. Mr. Cortes Aguilar's wife, Ortencia Alejandre, suffered five stab wounds in the attack—one to her neck and four to her chest, ranging from three inches deep to six inches deep—as well as multiple defensive wounds on her hands and arms. The couple's 13-year-old daughter also was

injured in the attack. After fleeing the scene, Mr. Cortes Aguilar confessed the killing to a family friend and asked to hide in that friend's garage. The State eventually charged Mr. Cortes Aguilar with first degree murder and first degree assault, before amending the latter charge to second degree assault.

After his arrest, Mr. Cortes Aguilar claimed he had killed Ms. Alejandre only after she had brandished the knife at him. Fearing for his safety, he claimed, he had disarmed his wife before turning the knife on her. Mr. Cortes Aguilar claimed that in the process of disarming Ms. Alejandre, he had suffered defensive wounds. He remembered his daughter intervening in the struggle but did not remember injuring her. At trial, Mr. Cortes Aguilar's daughter disputed this version of events. She testified that Mr. Cortes Aguilar had beat Ms. Alejandre with a belt before retrieving a knife from the kitchen and resuming his attack. She testified that her father during other altercations had retrieved a knife in this manner.

The jury convicted Mr. Cortes Aguilar of murder and assault. In an unsuccessful appeal, Mr. Cortes Aguilar challenged his murder conviction on the grounds of insufficient evidence and deficient counsel. He subsequently petitioned the trial court for additional DNA testing. Specifically, Mr. Cortes Aguilar asked the court to authorize initial tests, or additional tests, on 26 items of evidence. The court denied this request,

along with Mr. Cortes Aguilar's attendant motion to appoint counsel, on the grounds that

he did not meet the statutory threshold to secure additional testing.

Mr. Cortes Aguilar timely appeals the portion of the trial court's order denying

additional testing.

## ANALYSIS

### THRESHOLD FOR ADDITIONAL TESTING

Mr. Cortes Aguilar argues the trial court should have granted him additional

testing because he met both the procedural and substantive requirements under

RCW 10.73.170. Because he cannot establish two of the procedural criteria as well

as the substantive criterion, we affirm.

### *Standard of review*

We review a trial court's denial of postconviction relief for abuse of discretion.

*State v. Riofta*, 166 Wn.2d 358, 370, 209 P.3d 467 (2009). A trial court operates within

its discretion when its findings derive from the factual record, its conclusions apply sound

law, and its decisions are not manifestly unreasonable. *State v. Dye*, 178 Wn.2d 541,

548, 309 P.3d 1192 (2013).

*Threshold for additional testing*

To secure additional DNA testing of evidence from trial, an incarcerated defendant must satisfy three procedural criteria and one substantive criterion. RCW 10.73.170(1)-(3).

 *i. Procedural criteria*

A petition for additional testing carries its procedural burden if (1) the DNA testing initially performed was deficient, or else the testing now sought offers higher accuracy or "would provide significant new information," (2) the testing now sought is material to the identity of the perpetrator, and (3) the petition complies with applicable court rules. RCW 10.73.170(2). Where additional testing might negate the existence of a crime, as in supporting a theory of lawful self-defense, the testing likewise would negate the existence of a perpetrator; in that circumstance, the petitioner satisfies criterion (2) above. *State v. Braa*, 2 Wn. App. 2d 510, 519, 410 P.3d 1176 (2018).

Here, Mr. Cortes Aguilar satisfies the third procedural criterion because nothing in the record indicates his petition flouted any applicable rules. However, Mr. Cortes Aguilar does not satisfy the first and second criteria.

Mr. Cortes Aguilar does not satisfy the first criterion because he merely identifies what other tests he wishes to conduct, without explaining why the original testing was flawed or why the new tests would yield meaningful new information. Generally, Mr.

Cortes Aguilar's basis for securing additional testing is that the tests would show the presence of his own blood, supporting a self-defense theory. However, the discovery of his own blood at the crime scene would not yield "significant new information" because the jury, when it convicted Mr. Cortes Aguilar, already knew he had sustained lacerations at the crime scene. RCW 10.73.170(2)(a)(iii). To the extent a jury may be trusted to know lacerations bleed, the tests Mr. Cortes Aguilar seeks would not illuminate any new facts.

Mr. Cortes Aguilar also fails the second criterion, as the discovery of his blood at the crime scene would not suggest any fact that would substantiate a self-defense theory, thereby negating the existence of a crime and perpetrator.

### 1. *No excusable homicide defense*

A defendant is not liable by reason of self-defense when he commits excusable homicide. *State v. Moreno*, 26 Wn. App. 2d 681, 692, 529 P.3d 431 (2023). Excusable homicide arises when, while defending himself, the defendant "causes the victim's death 'by accident or misfortune.'" *Id.* at 693 (quoting RCW 9A.16.030).

Here, Mr. Cortes Aguilar cannot plausibly claim excusable homicide because Ms. Alejandre suffered a multitude of wounds, each of which necessarily was inflicted successively. These facts defeat excusable homicide as a matter of law because no inadvertence exists where a defendant deliberately inflicts an extended sequence of life-

threatening wounds. This is true notwithstanding any DNA test placing Mr. Cortes Aguilar's own blood at the crime scene.

### 2. *No justifiable homicide defense*

A defendant is not liable by reason of self-defense when he commits justifiable homicide. *Id.* at 692. Justifiable homicide arises when the defendant kills intentionally while under the reasonable belief that the victim posed "an imminent danger to the defendant." *Id.* at 693 (citing RCW 9A.16.050(1)).

Here, Mr. Cortes Aguilar cannot claim justifiable homicide because there can be no reasonable belief of "imminent danger" where only one weapon is in evidence and where the slayer has disarmed the victim prior to the homicide. *Id.* (citing RCW 9A.16.050(1)). To the extent Ms. Alejandre posed any threat to Mr. Cortes Aguilar—and eyewitness testimony suggests she did not—Mr. Cortes Aguilar neutralized the threat when he secured the knife from Ms. Alejandre. While justifiable homicide could have occurred during the struggle for the knife, Mr. Cortes Aguilar himself admitted that the killing occurred after he wrested control of the knife from Ms. Alejandre. This account is consistent with the defensive wounds Ms. Alejandre sustained to her hands and arms.

In sum, Mr. Cortes Aguilar does not show why the original DNA testing was flawed or why additional tests would yield meaningful new information. Moreover, the

testing he sought could not defeat the existence of a crime, and thus is not material to the identity of the perpetrator. We conclude that the trial court properly found that Mr. Cortes Aguilar did not carry his procedural burdens under RCW 10.73.170(2).

### ii. Substantive criteria

A petition for additional DNA testing carries its substantive burden when the defendant shows that additional testing would likely demonstrate his innocence "on a more probable than not basis." RCW 10.73.170(3). When considering a petition for additional testing, the court must extend to the defendant a presumption that further testing will yield a favorable result. *Riofta*, 166 Wn.2d at 368-69. Unlike the procedural criteria, however, the RCW 10.73.170(3) substantive criterion is "onerous." *Id.* at 367; *see also State v. Crumpton*, 181 Wn.2d 252, 261, 332 P.3d 448 (2014). A defendant will not secure additional testing unless the presumed favorable result would so offset the remaining evidence against him that his innocence becomes not merely a possibility, but a probability. *See Riofta*, 166 Wn.2d at 369 ("[C]ourts must consider . . . the impact that an exculpatory DNA test could have in light of [the remaining] evidence."); *see also Crumpton*, 181 Wn.2d at 260 ("[C]ourts should look to whether, considering all the evidence from trial and assuming an exculpatory DNA test result, it is likely the individual is innocent on a more probable than not basis.").

7

Here, Mr. Cortes Aguilar fails the substantive criterion because the discovery of his blood at the crime scene would not furnish any basis on which a jury could acquit him. Mr. Cortes Aguilar admitted killing Ms. Alejandre. His own account of the killing, along with Ms. Alejandre's defensive wounds and the protracted nature of the attack, proves the killing was intentional and premeditated. Mr. Cortes Aguilar's own daughter testified that the killing was deliberate and that Ms. Alejandre posed no threat to Mr. Cortes Aguilar. For reasons already described, Mr. Cortes Aguilar cannot plausibly raise an excusable homicide or justifiable homicide defense. All of this is true notwithstanding any discovery of his blood at the crime scene—especially when such a discovery would merely duplicate evidence the jury already heard, that Mr. Cortes Aguilar sustained lacerations during the attack. We conclude the trial court properly found that Mr. Cortes Aguilar did not carry his substantive burden under RCW 10.73.170(3).

*Statements of additional grounds (SAG)*

In addition to arguments presented by counsel, Mr. Cortes Aguilar states several additional grounds for review.

*i. Ground 1*

Mr. Cortes Aguilar asks this court to consider his case in light of *Braa*, 2 Wn. App. 2d 510; SAG at 1. The opinion of this court accounts for that case.

8

### ii. Ground 2

Mr. Cortes Aguilar asks this court to presume a favorable DNA test as described in *Crumpton*, 181 Wn.2d 252; SAG at 3. Our opinion presumes that every additional DNA test Mr. Cortes Aguilar seeks would test positive for his blood.

### iii. Ground 3

Mr. Cortes Aguilar argues the trial court erred by not considering his ineffective assistance claim when considering his petition for additional testing. SAG at 4. However, ineffective assistance of counsel was not before the court when it considered Mr. Cortes Aguilar's petition. The success of an additional testing petition under RCW 10.73.170 turns on the probability of demonstrating actual innocence, irrespective of performance of prior counsel. Accordingly, ineffective assistance of counsel likewise is beyond the scope of this court's review of the trial court's order.

### iv. Ground 4

Mr. Cortes Aguilar argues the trial court erred by not considering evidence cumulatively when assessing probability of innocence. SAG at 6. However, for the reasons described above, no quantity of positive tests for Mr. Cortes Aguilar's blood at the crime scene would offset the remaining evidence such as to establish probability of innocence.

*v. Grounds 5-7*

The final three additional grounds allege judicial and prosecutorial misconduct at trial and do not address Mr. Cortes Aguilar's petition for additional testing. SAG at 8-10 (as translated). Accordingly, these grounds lie outside the scope of Mr. Cortes Aguilar's current appeal.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Fearing, J.

Cooney, J.