IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31578-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY LAMAR ALLEN, SR., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Deoxyribonucleic acid (DNA) testing is a relatively new technology, but the many benefits of DNA testing have caused the use of these methods to explode in a wide variety of applications. Some of the most well-known benefits of DNA testing have been seen in the arena of criminal justice. The guilty are found and convicted, and the innocent are exonerated, all on the basis of microscopic evidence that is more unique than a fingerprint. DNA evidence is particularly helpful when a victim misidentifies an assailant he or she did not know.

A jury convicted Anthony Allen of the crimes of kidnapping and assault. Anthony Allen filed a motion for postconviction DNA testing. Allen contended that (1) negative DNA results would, in combination with other evidence, raise a reasonable probability

that Allen did not commit the crimes; or (2) positive results would, in combination with other evidence, show that he is innocent on a more probable than not basis. From the trial court's denial of the motion, Allen appeals. We affirm the trial court. Although DNA testing serves a worthwhile purpose, its employment is not helpful here, since the victims of the crimes were acquaintances of Anthony Allen and would not misidentify him. Thus, the statutory basis to compel DNA testing is not satisfied.

## FACTS

This court addressed Anthony Allen's direct appeal in *State v. Allen*, noted at 2009 WL 2999187 (Wash. App. Div. 3). The following facts and procedure below are drawn from that unpublished opinion and supplemented by the current record.

On August 19, 2007, Karla Jones and Dewey Hudson went to Hudson's Spokane house to retrieve Jones' dog. Unknown to Jones and Hudson, Anthony Allen and two other assailants, Uriah Allen and Wanda Phillips, waited inside Hudson's house. Hudson and Jones had known Anthony Allen for many years.

When Karla Jones and Dewey Hudson reached the porch of the house, Anthony Allen opened the door and pulled Jones into the entryway. Allen and his companions attacked Jones. Hudson tried to intervene, but Allen knocked him down, slapped him in the face with a butcher knife, and hit him in the jaw with the butt of the butcher knife. Allen then used the butcher knife to slash Jones' hair. Allen threatened to kill Jones if

2

she "messed" with his aunt again. Clerk's Papers at 112. Allen hit Hudson with a pistol. He and the two other assailants then left Hudson's house.

Dewey Hudson begged Karla Jones not to call the police; but Jones took her dog, ran home, and called the police. Officer Eugene Baldwin went to Jones' home within 10 minutes of Jones' phone call. Officer Baldwin saw injuries to Jones' head and face. Jones told Officer Baldwin that Allen and another man assaulted her and Hudson.

Officer Baldwin journeyed to Dewey Hudson's house and found Hudson unconscious in his living room with a swollen and bloody face. Hudson first told Baldwin nothing happened. Then recanting, Hudson told Officer Baldwin that he and Jones were assaulted. Hudson told Officer Baldwin that Allen hit him in the face and head with a handgun when he had tried to intervene. Officer Baldwin recovered the butcher knife from the home. The butcher knife had blood on the blade. Two blood swabs of that blood were taken, but DNA testing was not conducted.

## PROCEDURE

On September 25, the State of Washington charged Anthony Allen with first degree kidnapping and two counts of second degree assault with a deadly weapon.

Dewey Hudson's testimony at trial differed from his statement to Officer Baldwin at the scene of the crime. Hudson testified that he incurred his injuries when he tried to remove Karla Jones from his house. Hudson further testified that he did not remember talking to Officer Baldwin and denied that Anthony Allen assaulted him.

3

Officer Baldwin testified that, after he described to Dewey Hudson, on the day of the assault, the extent of Karla Jones' injuries, Hudson grew receptive to telling the truth. Officer Baldwin repeated for the jury Hudson's earlier version of events, in which Hudson intervened to protect Jones, but Allen hit him with a handgun.

On December 20, a jury found Anthony Allen guilty of first degree kidnapping and two counts of second degree assault with a deadly weapon. By special verdict, the jury found that the deadly weapon was not a firearm.

On November 29, 2012, Anthony Allen moved, under RCW 10.73.170, for postconviction DNA testing of the blood found on the knife. The trial court denied his motion on the ground that testing could not prove his innocence on a more probable than not basis.

## LAW AND ANALYSIS

RCW 10.73.170 allows a convicted person currently serving a prison sentence to petition the trial court for postconviction DNA testing. The petitioner must satisfy both procedural and substantive requirements of the statute. RCW 10.73.170(2), (3). The statute, adopted in 2000, reads in pertinent part:

> (1) A person convicted of a felony in a Washington state court who currently is serving a term of imprisonment may submit to the court that entered the judgment of conviction a verified written motion requesting DNA testing, with a copy of the motion provided to the state office of public defense.
> (2) The motion shall:
> (a) State that:

4

(i) The court ruled that DNA testing did not meet acceptable scientific standards; or

(ii) DNA testing technology was not sufficiently developed to test the DNA evidence in the case; or

(iii) The DNA testing now requested would be significantly more accurate than prior DNA testing or would provide significant new information;

(b) Explain why DNA evidence is material to the identity of the perpetrator of, or accomplice to, the crime, or to sentence enhancement; and

(c) Comply with all other procedural requirements established by court rule.

(3) The court shall grant a motion requesting DNA testing under this section if such motion is in the form required by subsection (2) of this section, and the convicted person has shown the likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis.

. . . .

(5) DNA testing ordered under this section shall be performed by the Washington state patrol crime laboratory. Contact with victims shall be handled through victim/witness divisions.

RCW 10.73.170. The statute was adopted to qualify Washington State for federal funding under the Justice For All Act of 2004. Pub. L. No. 108-405, 118 Stat. 2260, 2261-62. The Washington statute is modeled after the federal DNA testing statute, 18 U.S.C. § 3600(a). *State v. Riofta*, 166 Wn.2d 358, 368, 209 P.3d 467 (2009).

Procedurally, the petitioner must: state that DNA testing would provide significant new information; explain why DNA evidence is material to the identity of the perpetrator; and comply with applicable court rules. RCW 10.73.107(2)(a)-(c). Here, the trial court properly determined that Allen met the procedural requirements of RCW 10.73.170(2)(a)(iii), since DNA testing was not done prior to trial.

At issue is whether Anthony Allen satisfied the substantive requirements of RCW 10.73.170. In contrast to the statute's lenient procedural requirements, its substantive standard is onerous. *State v. Riofta*, 166 Wn.2d 358, 367, 209 P.3d 467 (2009). RCW 10.73.170(3) provides, "The court shall grant a motion requesting DNA testing under this section if . . . the convicted person has shown the likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis." A motion for testing is not decided in a vacuum. *State v. Riofta*, 166 Wn.2d at 367-68. The statute requires a trial court to grant a motion for postconviction testing when exculpatory results would, in combination with the other evidence, raise a reasonable probability the petitioner was not the perpetrator. *Riofta*, 166 Wn.2d at 367-68. The legislature intended to restrict the availability of postconviction DNA testing to a limited class of extraordinary cases where the results could exonerate a person who was wrongfully convicted of a crime. *Riofta*, 166 Wn.2d at 369 n.4.

Case law supports using a favorable presumption when deciding whether to grant a motion for post-conviction DNA testing. We formally hold that this presumption is part of the standard in RCW 10.73.170. A court should look to whether, considering all the evidence from trial and assuming an exculpatory DNA test result, it is likely the individual is innocent on a more probable than not basis. If so, the court should grant the motion and allow testing to be done. Only then can it be determined whether the DNA

6

actually exculpates the individual and if the results could be used to support a motion for a new trial.

In other words, a court should evaluate the likelihood of innocence based on a favorable test result, not the likelihood of a favorable test result in the first place. There is no indication that the trial court used a standard that included use of a favorable presumption. In its conclusions of law, the trial court stuck to the statutory language, with no mention of a presumption of favorability or hypothetical inferences from an exculpatory test result. Since we have found that this presumption is part of Washington law and should be applied, we are forced to assume the trial court did not apply the proper standard and therefore abused its discretion.

In 1993, a 75-year-old widow living alone in Bremerton was repeatedly raped by an intruder. *State v. Crumpton*, 172 Wn. App. 408, 410, 289 P.3d 766 (2012), *review granted*, 177 Wn.2d 1015, 306 P.3d 960 (2013), *rev'd*, 332 P.3d 448 (2014). The woman was awoken at around 3:15 a.m. and saw a man standing in her room. *Id.* The man covered her head with bedding and raped her five times, four times anally and once vaginally. *Id.* In between each rape, he rummaged through different rooms in the house for valuables. *Id.* The woman was unable to give a good description of the rapist due to the dark room and her head being covered during the encounter. *Id.*

Anthony Allen argues that DNA evidence would show that he was mistakenly identified as the assailant. The *Riofta* court accepted that mistaken eyewitness

7

identification is a leading cause of wrongful conviction. 166 Wn.2d at 371; *see also* Brandon L. Garrett, *Judging Innocence*, 108 COLUM. L. REV. 55, 60 (2008). The court addressed mistaken eyewitness identification by analyzing both the impact of a favorable DNA test and the likelihood of misidentification.

*Riofta* controls our decision. Alexander Riofta stole a vehicle in which he found a white hat. He wore the white hat when he, accompanied by two others, pulled up to the house of Veasna Sok. Sok previously agreed to testify against Riofta for gang-related activity. When Sok's little brother, the victim, exited the house, Riofta fired three shots at him, missing each time. The victim recognized Riofta as his neighbor of four or five years. Riofta fled the scene leaving behind the white hat and revealing his shaved head. The hat was later identified as belonging to the owner of the stolen vehicle. The State did not analyze the hat for DNA evidence. Riofta was found guilty of first degree assault with a firearm. Riofta then petitioned for postconviction DNA testing of the white hat.

The *Riofta* court analyzed the impact of DNA testing by recognizing that other people's DNA could be found on the hat, and that Alexander Riofta's DNA may not be found on the hat. Most likely, Riofta was not the only person to wear the hat. The hat's original owner could have worn the hat along with either of the two accomplices in the car. The presence of other's DNA would not show the defendant's innocence on a more probable than not basis.

Perhaps more importantly, the *Riofta* court underlined the fact that the victim

8

knew Alexander Riofta. The two lived in the same neighborhood and had known each other for four or five years. Riofta had visited the victim's home several times to meet with his brother. The victim had ample time to recognize both Riofta and his voice at the time of the attack. When police first interviewed Sok, he promptly provided Riofta's name and an accurate physical description.

*Riofta* should be juxtaposed with *State v. Thompson*, 173 Wn.2d 865, 271 P.3d 204 (2012). In the latter case, the state high court reversed the denial of Bobby Ray Thompson's request for DNA testing of vaginal swabs. Thompson had been convicted of first degree rape. The victim was unsure of her ability to identify the attacker and her tentative description did not match Thompson.

We review a trial court's decision on a motion for postconviction relief for abuse of discretion. *State v. Hardesty*, 129 Wn.2d 303, 317, 915 P.2d 1080 (1996); *Riofta*, 166 Wn.2d at 370. The lower court did not abuse its discretion under the facts of this case.

Just as the lack of DNA or the presence of other person's DNA on the hat in *Riofta* did not make the defendant's innocence more probable; the lack of or the existence of Anthony Allen's DNA on the knife does not make it more probable than not that Allen is innocent. Allen argues that the presence of his blood on the knife would make it unlikely that he wielded the knife during the assaults. He alternatively argues that, if DNA testing excludes him as a contributor to the DNA, the exclusion would exonerate him as the assailant. Both arguments are illogical.

9

The presence of Anthony Allen's DNA on the knife would only show that Allen was close enough to the altercation to be involved. Allen does not claim to be a victim. Therefore, the presence of his DNA would further implicate him as the assailant. If Allen's DNA is not found on the knife it would merely show that his DNA was not transferred; it would not show that he did not wield the knife. If another person's DNA was found on the knife, it would only show that at some point prior to the assault someone else handled the knife. Allen was one of three assailants, all of whom were in Hudson's house and could have handled the knife before it ultimately ended up in Allen's hands. A kitchen utensil is often used by multiple people and would have multiple sources of DNA.

Anthony Allen argues that DNA evidence would show that he was mistakenly identified as the assailant. Like *Riofta*, the evidence in this case shows that Dewey Hudson and Karla Jones knew Allen for many years. Hudson and Jones identified Allen as the assailant during the initial investigation, and Jones identified him at trial. Since Jones testified that Allen threatened to kill her, hearing his voice further confirmed an identification. The prior relationship between Hudson, Jones, and Allen reduced the possibility that Allen was mistakenly identified as the assailant.

We must view the evidence in the light that the DNA testing will be favorable

No. 31578-9-III
*State v. Allen*

STATEMENT OF ADDITIONAL GROUNDS (SAG)

Anthony Allen brings two claims in his SAG. First, Allen claims the trial court's denial of his motion for postconviction DNA testing violates his due process rights under the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution. This court rejected this same argument in *Riofta v. State*, 134 Wn. App. 669, 692, 142 P.3d 193 (2006), *review granted in part*, 161 Wn.2d 1001, 166 P.3d 718 (2007), *aff'd*, 166 Wn.2d 358, 209 P.3d 467 (2009).

Second, Anthony Allen claims he was not afforded effective assistance of appellate counsel in violation of the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. If Allen believes he received ineffective assistance on appeal then he should file a personal restraint petition with this court pursuant to RAP 16.4. The current record is insufficient to address this issue.

Allen's SAG presents no error for which this court could provide relief.

CONCLUSION

We affirm the trial court's denial of Anthony Allen's petition for DNA testing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to

11

No. 31578-9-III
*State v. Allen*

RCW 2.06.040.

WE CONCUR:

Fearing, J.

Brown, A.C.J.

Lawrence-Berrey, J.

12