# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  57939-1-II |
| Respondent, | |
| v. | |
| LONNIE ECKLAS TENNANT, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Lonnie E. Tennant appeals the superior court's order denying his motion for post-conviction DNA testing, arguing that the superior court erred by finding that there was no DNA material to test and by violating his right to due process.  Tennant failed to meet any of the procedural requirements for granting a post-conviction motion for DNA testing.  Therefore, the superior court did not abuse its discretion by denying Tennant's motion.  And any alleged due process violation is harmless.[1]  Accordingly, we affirm.

## FACTS

In April 2002, a jury found Tennant guilty of second degree rape of a child, second degree child molestation, and second degree rape.  Tennant was sentenced to life without the possibility of parole as a persistent offender.  On appeal, this court summarized the facts of the rape as follows:

> In November, 2001, thirteen-year-old A.V. lived with her mother, K.V., in a small bungalow in Longview, Washington.  A.V. had met 40 year-old Tennant the previous summer.  Since that time, Tennant had called A.V. so frequently that

---

[1] Tennant also filed a statement of additional grounds (SAG).  RAP 10.10.  However, Tennant's entire SAG addresses errors he believes occurred at his trial and, therefore, is outside the scope of this appeal, which is limited to the order denying his motion for post-conviction DNA testing.

A.V.'s mother had asked him not to call anymore because A.V. was only 13 years-old.

When her mother was gone, A.V. sometimes stayed with her neighbor, Charles Collier. While staying at Collier's bungalow for a few days beginning November 9, 2001, A.V. received a phone call from Tennant. He told her to go to a nearby trailer and to tell someone named "Jacob" who she was so that he would let her inside the trailer. "Jacob" was the 15 year-old son of Paul Wright. Jacob and Paul lived together in the trailer. Tennant was staying with the Wrights for four days, around November 11 to 14.

A.V. followed Tennant's instructions and went to the Wrights' trailer. Tennant arrived a short time later and spent the evening watching television with A.V. Later, he asked A.V. to go to the back bedroom with him. She complied. Tennant then confessed his love to A.V. and told her that he was waiting for some money to arrive; that he would get her fake identification; and that he wanted her to go with him to Salt Lake City, where his family had a house. A.V. fell asleep on the bed. In the morning, A.V. returned to Collier's bungalow.

A.V. returned to the Wrights' trailer the following afternoon to retrieve a ring and some pictures that she had left the previous day. She stayed the evening and had dinner with the Wrights. Again that evening, Tennant told A.V. that he wanted to take her to Salt Lake City.

Around 10 or 11 P.M., Tennant gave A.V. two white pills from Paul Wright's dresser. After taking the pills, A.V. felt that she would pass out; so she lay down on the bed and went to sleep. At the time she fell asleep, she was wearing shorts, a shirt, underwear, and a bra.

A.V. woke up later in the morning to find Tennant on top of her, having intercourse with her. She pushed him off, got up, told him she needed to use the bathroom, and ran out of the trailer back to Collier's, passing Paul Wright as she ran out the door.

When A.V. reached Collier's house, she banged on the door. Collier let her in and she immediately told him that Tennant had raped her. Collier called A.V.'s mother and then the police. A.V.'s mother arrived within a few minutes. Shortly after that, Longview Police Officer Jeffrey Leak arrived and took a report from A.V. Then A.V.'s mother took her to the hospital.

At the hospital, emergency room medical staff interviewed A.V., and performed a physical and a rape protocol exam. The rape protocol exam included taking pubic hair combings and genital and rectal swabs. The staff also took the clothes that A.V. was wearing shorts and a shirt, but no underwear.

After the medical exam, A.V. gave Officer Leak a detailed statement of everything that had happened to her. Her clothing was placed into evidence, and Leak went to the Wrights' trailer to look for Tennant. Officer Jeff Davis joined Leak and they apprehended Tennant a short time later. Leak transported Tennant to the police station, where Tennant admitted to having stayed two nights in the trailer with A.V. But he denied any type of sexual contact with her.

*State v. Tennant*, noted at 119 Wn. App. 1038, 2003 WL 22890423, at *1-2 (footnote omitted).

The opinion described A.V.'s testimony regarding the rape:

When she awoke and found Tennant on top of her, she pushed him away saying, "Get off of me, Lonnie, this is wrong." Tennant responded, "Don't stop me, don't stop me, I love you. I've been [having oral sex with] you for 15 minutes and you didn't do anything." A.V. then got up and ran from the trailer.

*Id.* at *2. The opinion also described Paul Wright's testimony that "Tennant admitted to performing oral sex on A.V." and told Paul Wright "that A.V. had left the trailer because she woke up when he began performing oral sex on her." *Id.* at *3. Finally, the opinion noted, "The Washington State Crime Lab had analyzed the samples taken during A.V.'s rape protocol exam, but did not find the presence of either saliva or semen." *Id.*

This court affirmed Tennant's convictions and sentence. *Id.* at *1, *9. This court's opinion was mandated in July 2004. Mandate, *State v. Tennant*, No. 28953-9-II (Jul. 13, 2004).

In September 2022, Tennant filed a pro se motion for post-conviction DNA testing under RCW 10.73.170 and a motion for appointment of counsel. In his motion for post-conviction DNA testing, Tennant alleged:

The evolution in technology in relation to when I was arrested has improved/advanced considerably. Said technology—in regards [sic] to the testing of DNA evidence should be considered in this case.

Clerk's Papers (CP) at 44. Tennant also included a declaration in support of his motion in which he stated,

> The evidence retained in this case deserves to be tested utilizing the latest-modern day technology, related to DNA.

CP at 47.

The State filed a response opposing Tennant's motion for post-conviction DNA testing. The State explained that the samples taken during the victim's rape protocol were examined in the original investigation and the crime lab did not find the presence of either saliva or semen on the swabs. Therefore, the State asserted that there was no material that was tested in 2001 and there is no material that could be tested for DNA in response to Tennant's motion. The State further noted that Tennant failed to demonstrate how DNA testing was material because identity was never an issue in Tennant's case.

At the hearing on Tennant's motion, the superior court asked if Tennant had received a copy of the State's response and Tennant said he had not received it. Tennant then asked the superior court if he could have an attorney. The State noted it would normally not oppose the request for an attorney; however, because there was no material at all to test and no conceivable basis on which to move forward, appointing an attorney seemed futile. The superior court stated that it was going to deny Tennant's motion because there was simply nothing to test.

After the hearing, the superior court entered a written order including the following findings of fact:

2.  A rape protocol examination of the victim was performed in 2001, but no material (saliva or semen) was present to test for DNA.

3.  No DNA testing was ever done in this case. There was no material to test for DNA when the case was investigated and tried. There is no material to test for DNA now.

CP at 48. The superior court concluded that Tennant failed to make the required showing under RCW 10.73.170. The superior court denied Tennant's motions for post-conviction DNA testing and appointment of counsel.

Tennant appeals.

## ANALYSIS

A. LEGAL PRINCIPLES

Post-conviction DNA testing is governed by RCW 10.73.170. RCW 10.73.170 provides:

> (1) A person convicted of a felony in a Washington state court who is currently serving a term of imprisonment may submit to the court that entered the judgment of conviction a verified written motion requesting DNA testing, with a copy of the motion provided to the state office of public defense.
> (2) The motion shall:
> (a) State that:
> (i) The court ruled that DNA testing did not meet acceptable scientific standards; or
> (ii) DNA testing technology was not sufficiently developed to test the DNA evidence in the case; or
> (iii) The DNA testing now requested would be significantly more accurate than prior DNA testing or would provide significant new information;
> (b) Explain why DNA evidence is material to the identity of the perpetrator of, or accomplice to, the crime, or to sentence enhancement; and
> (c) Comply with all other procedural requirements established by court rule.
> (3) The court shall grant a motion requesting DNA testing under this section if such motion is in the form required by subsection (2) of this section, and the convicted person has shown the likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis.

We review the superior court's decision on a motion for post-conviction DNA testing under RCW 10.73.170 for an abuse of discretion. *State v. Riofta*, 166 Wn.2d 358, 370, 209 P.3d 467 (2009). A trial court abuses its discretion when its decision is "'based on untenable grounds'" or "'untenable reasons.'" *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013) (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)).

RCW 10.73.170 contains procedural and substantive criteria that must be met in order for a convicted person to obtain post-conviction DNA testing. RCW 10.73.170(2)-(3); *see also Riofta*, 166 Wn.2d 366-67 (distinguishing between the procedural requirements in RCW 10.73.170(2) and the substantive requirement in RCW 10.73.170(3)).

The procedural requirement is "lenient." *Riofta*, 166 Wn.2d at 367. To satisfy the procedural requirement the motion must: (1) state the basis of the request under RCW 10.73.170(2)(a)(i)-(iii), (2) explain how the DNA evidence is relevant to the identity of the perpetrator, and (3) comply with applicable court rules. RCW 10.73.170(2)(a)-(c); *Riofta*, 166 Wn.2d at 366.

If the procedural requirements are met, the petitioner must then meet the "onerous" substantive requirement. *Riofta*, 166 Wn.2d at 367. Under the substantive requirement, the petitioner must show a "likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis." RCW 10.73.170(3). When evaluating whether the substantive requirement is met the courts presumes a favorable DNA test result. *State v. Crumpton*, 181 Wn.2d 252, 262, 332 P.3d 448 (2014). Then, the "'court must look to whether, viewed in light of all the evidence presented at trial or newly discovered, favorable DNA test results would raise the likelihood that the person is innocent on a more probable than not basis.'" *State v. Thompson*, 173 Wn.2d 865, 872-73, 271 P.3d 204 (2012) (emphasis omitted) (quoting *Riofta*, 166 Wn.2d at 367).

B.    PROCEDURAL REQUIREMENTS OF RCW 10.73.170 NOT MET

Here, the State argues that the superior court did not abuse its discretion in denying Tennant's motion for post-conviction DNA testing because Tennant's motion failed to satisfy the procedural requirements; specifically, Tennant failed to adequately state a basis for the motion under RCW 10.73.170(2)(a)(i)-(iii) and Tennant failed to show how DNA evidence was material

to the identity of the perpetrator. Tennant argues that the superior court erred in finding that there was no DNA material to test, apparently asserting that he properly established grounds for the motion under RCW 10.73.170(2)(a). Br. of Appellant at 12 ("Testing the swabs in Tennant's case for the presence of DNA may now yield positive results not possible with the methods used over 20 years ago."). We agree with the State.

Tennant's motion appears to be based on RCW 10.73.170(2)(a)(ii), "DNA testing technology was not sufficiently developed to test the DNA evidence in the case[,]" and RCW 10.73.170(2)(a)(iii), "The DNA testing now requested would be significantly more accurate than prior DNA testing or would provide significant new information."

In his motion, Tennant asserted only that DNA technology had improved considerably, but Tennant did not identify any specific improvement in technology that was relevant to his case. This is not a case in which DNA evidence was identified but could not be tested based on limitations of the available technology. Instead, there was no biological material identified to be tested at all, let alone any DNA present within that biological material. Although the procedural requirements of the statute are lenient, a vague assertion that there have been advancements in DNA technology without identifying in any way how those advancements are relevant to the petitioner's case is not sufficient to satisfy the procedural requirement that Tennant state the basis for the motion under RCW 10.73.170(2)(a)(i)-(iii). Tennant has failed to show that the failure to test DNA was related to insufficient technology or that testing now would provide significant new information by identifying not only biological material that was previously undetectable, but that that material would contain DNA that could be tested. RCW 10.73.170(2)(a)(ii)-(iii).

Tennant failed to meet the additional procedural requirement to "[e]xplain why DNA evidence is material to the identity of the perpetrator" of the crime. RCW 10.73.170(2)(b).

Tennant's motion made no attempt to provide an explanation that would satisfy RCW 10.73.170(2)(b).

Further, identity was not an issue in Tennant's case. A.V. was not raped by a stranger. A.V. clearly identified Tennant as the person who raped her multiple times, and A.V. had had multiple prior contacts with Tennant. Also, testimony at trial established that Tennant admitted he performed oral sex on A.V. Therefore, physical evidence was not necessary or apparently relied on to establish identity. *Tennant*, 2003 WL 22890423, at *1. Also, there is no dispute that Tennant stayed multiple nights in the Wrights' trailer with A.V.; Tennant even admitted he did that to the police after he was arrested. *Id.* at *2.

The only issue at trial was whether the alleged sexual contact between A.V. and Tennant actually occurred, not the identity of the perpetrator. Because identity was never an issue at Tennant's trial, Tennant has failed to meet the additional procedural requirement that he explain how DNA evidence is material to the identity of the perpetrator of the crime. Thus, the superior court did not abuse its discretion in denying Tennant's motion for post-conviction DNA testing because Tennant's motion failed to satisfy the procedural requirements of RCW 10.73.170.

C.     DUE PROCESS

Tennant argues that his right to due process was violated when the superior court failed to give him an opportunity to orally respond to the State's objection to his motion. Even assuming, without deciding, that the superior court erred and such error was constitutional, any error was harmless. Under the constitutional harmless error standard, an error is harmless if we are convinced beyond a reasonable doubt that the same result would have been reached absent the error. *See State v. Heng*, ___ Wn.3d ___, 539 P.3d 13, 19 (2023) ("Under constitutional harmless

error analysis, the court will reverse unless it is persuaded beyond a reasonable doubt that the error did not contribute to the verdict.").

Here, Tennant's motion failed to meet the procedural requirements of the statute. And no response Tennant could have made to the State's objection would change the fact that identity was never an issue in Tennant's case. Therefore, we are convinced beyond a reasonable doubt that any alleged error in failing to give Tennant an opportunity to respond to the State was harmless because no response would have changed the outcome of Tennant's motion.

## CONCLUSION

Tennant's motion for post-conviction DNA testing fails to meet the procedural requirements of RCW 10.73.170(2)(a)-(b); therefore, we do not reach whether Tennant can satisfy the onerous substantive requirement of the statute. Because Tennant's motion failed to meet the procedural requirements of the statute, the superior court did not abuse its discretion in denying Tennant's motion for post-conviction DNA testing. And any alleged violation of Tennant's due process rights was harmless. Accordingly, we affirm.

No. 57939-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Glasgow, C.J.

Price, J.