IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40166-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| LUIS GUADALUPE RODRIGUEZ-PEREZ, | ) | |
| | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — The State charged Luis Rodriguez-Perez and William Martinez of murder in the second degree, either as principal or accomplice. Witness and video evidence firmly established that one of the two was the shooter and the other was the accomplice. After Martinez testified that Rodriguez-Perez was the shooter, the State changed its theory and argued that Rodriguez-Perez was the principal. A jury convicted both of murder, Rodriguez-Perez appealed his conviction, and we affirmed.

Thereafter, and pursuant to RCW 10.73.170, Rodriguez-Perez moved the trial court to allow postconviction DNA testing of swabs of his hands taken after the shooting and of a shell casing recovered from the scene. He argued the swabs of his hands would show the absence of gun powder, which would establish he was not the shooter, and the shell casing would not contain his DNA, further establishing he was not the shooter. The

trial court denied Rodriguez-Perez's motion, and he appealed the denial to this court.

We note that postconviction testing for gun powder is not permitted by

RCW 10.73.170. We conclude that a favorable DNA test of the shell casing would not

establish Rodriguez-Perez's innocence on a more probable than not basis. Rather, in the

context of the evidence at trial, a favorable DNA test, at most, would establish only that

Rodriguez-Perez was an accomplice to murder. Because Washington law treats

accomplice liability the same as principal liability, we affirm the trial court's denial of

Rodriguez-Perez's motion for postconviction DNA testing.

## FACTS

*Background*

In 2014, Luis Rodriguez-Perez, William Martinez, and Efren Iniquez attended a

concert. *State v. Rodriguez-Perez*, 1 Wn. App. 2d 448, 452, 406 P.3d 658 (2017).

Martinez saw that Rodriguez-Perez was carrying a firearm in his waistband, which was

the same gun he normally carried. *Id.* Rodriguez-Perez drove his friends to the concert.

*Id.* As the trio approached the concert venue, they noticed security staff using a wand to

scan entrants for firearms. *Id.* Rodriguez-Perez walked away from the entrance, and

minutes later, returned and entered the venue. *Id.*

During the event, approximately 40-50 people left the venue, and a number of

them began to fight. *Id.* Surveillance video showed Martinez running toward the parked

car with Rodriguez-Perez walking behind. *Id.* The video showed the two walking back toward the fight minutes later. *Id.*

At the fight, Da'Marius Morgan punched Justin Navarro. *Id.* at 453. The two individuals were arguing when either Martinez or Rodriguez-Perez fired at least three shots at Morgan. *Id.* One of the bullets struck Morgan's heart, which led to his death. *Id.* A bystander was shot in the leg but was unable to identify the shooter. *Id.*

The security guard at the event witnessed the shooting. *Id.* He saw one of three men standing near his truck shoot a gun at Morgan. *Id.* The security guard saw Morgan fall to the ground and witnessed the three men flee toward an alley. *Id.* The three men later were identified as Rodriguez-Perez, Martinez, and Iniquez. *Id.* A surveillance video showed Rodriguez-Perez tossing an object into a bush. *Id.*

Law enforcement arrived at the scene and quickly went to the alley. *Id.* at 453-54. The officers saw people yelling and running toward a bush. *Id.* at 454. Rodriguez-Perez and Martinez were hiding behind the bush, and the officers pulled them out from behind the bush and arrested them. *Id.*

Two witnesses identified Martinez as the shooter. *Id.* Another witness said Martinez was the shooter but then said it was possible Rodriguez-Perez could be the shooter if he had been wearing a hat and later removed it. *Id.*

3

The officers did not find the gun at the time of the arrest. *Id.* However, a man walking his dog the next morning found the weapon where the surveillance video showed Rodriguez-Perez tossing it. *Id.* Forensic tests established that the gun was the murder weapon. *Id.* In addition, the gun's magazine had a fingerprint that matched Rodriguez-Perez's fingerprint. *Id.*

*DNA Testing*

An evidence technician used buccal swabs to obtain DNA samples from both Rodriguez-Perez and Martinez. The buccal swabs were used as reference samples to compare with DNA found on the trigger, grips, slide, and magazine lips of the murder weapon. Before the DNA test of the weapon was conducted, the deputy prosecutor learned that the DNA found on the gun would be consumed during testing. The court granted the State's motion allowing the crime laboratory to consume the entire quantity of the DNA on the gun. The DNA testing of the gun showed a profile mixture of at least four individuals. Because the profile was complex, the DNA testing did not include or exclude either suspect.

The State charged Rodriguez-Perez and Martinez as principals and accomplices for the murder of Morgan. The State also charged both as principals and accomplices for assault of the bystander. Initially, the State sought to prove that Rodriguez-Perez was the accomplice. But after Martinez testified that Rodriguez-Perez was the shooter, the State

argued that he was the principal. Following trial, the jury convicted both men of the murder yet acquitted both of assault. We later affirmed Rodriguez-Perez's conviction.

Thereafter, pursuant to RCW 10.73.170, Rodriguez-Perez filed a motion for DNA testing of the swabs of his hands and a shell casing found at the scene. In his motion, he requested that the swabs of his hands be tested for gunshot residue or any other DNA, and the shell casing be tested for DNA. The State opposed the motion. At the hearing, Rodriguez-Perez argued that further DNA testing would show he never held the gun, which would clear him of liability as a principal.

In its written conclusions denying the motion, the trial court explained:

5. DNA evidence presented at trial was not conclusive and did not support a conviction or acquittal; but the jury verdict reflects that it relied on other evidence which was sufficient to support Mr. Rodriguez-Perez' conviction.
6. DNA taken from the firearm that was used to kill the victim showed a mixed sample which came from more than one contributor and was not used to specifically identify the defendant as the murderer.
7. Testing of DNA samples taken from the defendant would not impact the verdict or establish innocence because there was not any DNA evidence used to identify the defendant.

Clerk's Papers at 79.

Rodriguez-Perez appeals the denial of his motion to this court.

ANALYSIS

Rodriguez-Perez argues the trial court erroneously applied the law by not presuming a favorable DNA result and by improperly using a sufficiency of the evidence analysis. The State denies any legal error but alternatively argues that any error or inadequacy in the findings and conclusions is harmless because Rodriguez-Perez failed to establish the substantive requirement for postconviction DNA testing. We agree with the State.

POSTCONVICTION DNA TESTING

*Standard of Review*

A trial court's decision on a motion for postconviction DNA testing is reviewed for an abuse of discretion. *State v. Crumpton*, 181 Wn.2d 252, 257, 332 P.3d 448 (2014). A trial court abuses its discretion if it applies an incorrect legal standard. *Id.*

A defendant does not have a constitutional right to DNA testing. *Id.* at 258. Thus, any error in denying postconviction DNA testing is subject to a nonconstitutional harmless error analysis. Under this standard, we will affirm the trial court unless there is a reasonable probability that the outcome of the litigation would have been materially different if no error had occurred. *State v. Barry*, 183 Wn.2d 297, 303, 352 P.3d 161 (2015).

*Substantive Requirement*

The substantive component for postconviction DNA testing requires the convicted person to show "the likelihood that the DNA evidence would demonstrate innocence on a more probable than not basis." RCW 10.73.170(3). Courts are required to presume that potential DNA results would be favorable to the defendant. *Crumpton*, 181 Wn.2d at 262.

> At the same time, a trial court should not ignore the evidence from trial. It must look at DNA evidence in the context of all the evidence against the individual when deciding the motion. It is only within the context of the other evidence that the court can determine whether DNA evidence might demonstrate innocence. A trial court must look to see how the evidence stands up in the presence of a favorable DNA test. While a court should not retry a case to decide this motion, the evidence at trial matters and should be taken into account.

*Id.* at 262-63 (footnote, citations, and internal quotation marks omitted).

Here, the written findings and conclusions fail to presume that a DNA test result of the shell casing would be favorable to Rodriguez-Perez. The findings and conclusions further fail to meaningfully explain how a favorable DNA test result would not demonstrate Rodriguez-Perez's innocence on a more probable than not basis. But, as explained below, these failures are harmless.

We first note that gun residue testing of Rodriguez-Perez's hand swabs is not permitted under RCW 10.73.170, which is limited to DNA testing. Next, we presume a

favorable DNA test result, i.e., that Martinez's DNA would be found on the shell casing. But this favorable result, in our view, would not demonstrate Rodriguez-Perez's innocence on a more probable than not basis.

Even if *Martinez's* DNA is on the shell casing, this would not change the fact that Rodriguez-Perez was either a principal or an accomplice to the murder of Morgan. First, because the DNA evidence would only establish who loaded the gun, a jury still could readily find that Rodriguez-Perez was the shooter. Alternatively, a jury might find that Martinez loaded the gun and also was the shooter. In that event, the favorable DNA test still would not change the fact that Rodriguez-Perez was guilty as an accomplice.

"A person is an accomplice of another person in the commission of a crime if . . . [w]ith knowledge that it will promote or facilitate the commission of the crime, he or she . . . [a]ids . . . such other person in . . . committing it." RCW 9A.08.020(3)(a)(ii). Here, a favorable DNA test result of the casing could allow a jury to find that Rodriguez-Perez retrieved his gun from his car and then gave his gun to Martinez, who loaded the gun, before both men returned to the fight. Still, giving a gun to a person before returning to a fight is sufficient to establish accomplice liability. This is especially true here, where Rodriguez-Perez and Martinez were together when the fatal shot was fired, and Rodriguez-Perez tossed the gun into a bush and hid with Martinez.

8

Rodriguez-Perez argues the identity of the shooter was pivotal because the bystander could not identify his shooter, and this must have been why the jury acquitted both him and Martinez of assault. We disagree that the identity of the shooter was pivotal to the jury. The jury was instructed on the law, which makes an accomplice liable as a principal. One would need to speculate as to why Rodriguez-Perez and Martinez were acquitted of assaulting the bystander. One requesting postconviction DNA testing cannot rely on speculation. Rather, one requesting postconviction DNA testing must establish a likelihood that the evidence would establish their innocence on a more probable than not basis. RCW 10.73.170(3). Rodriguez-Perez fails to establish this.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Fearing, J.

Cooney, J.

9